# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Model VL 68PRO
Seized as FP&F No. 2026255400034901-0003
("Target Device 2")

Case No. 26mj6205

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the Southern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ❒ contraband, fruits of crime, or other items illegally possessed;
- ❒ property designed for use, intended for use, or used in committing a crime;
- ❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 8, U.S.C. § 1324(a)(1)(A)(ii) | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Adan Mendoza-Rojas incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ❒ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Adan Mendoza-Rojas
*Applicant's signature*

Adan Mendoza-Rojas, U.S. Border Patrol Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 10/15/2026

*Judge's signature*

City and state: San Diego, California

HON. MICHAEL S. BERG, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Adan Mendoza-Rojas, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

White iPhone 8 with Black Case
Seized as FP&F No. 2026255400034901-0002
**("Target Device 1")**

Model VL 68PRO
Seized as FP&F No. 2026255400034901-0003
**("Target Device 2")**

Real Me Phone
Seized as FP&F No. 2026255400034902-0001
**("Target Device 3")**

Collectively, the **Target Devices**, as further described in Attachments A-1, A-2, & A-3 to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Transportation of Illegal Aliens), as further described in Attachment B.

2. The requested warrants relate to the investigation and prosecution of defendant, Michael GARIBAY, ("GARIBAY"), for transporting and moving illegal alien, including Gaudencio MUNOZ-Zamora ("MUNOZ") (the "Material Witness"), within the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

//

//

**TRAINING AND EXPERIENCE**

4. I have been employed by the USBP since 2019 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for 7 years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work

in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses. In turn, evidence of these activities can also commonly be found on cellular telephones belonging to aliens being smuggled because cellular telephones facilitate ready coordination and communication.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has

occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in human smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

11. On September 23, 2026, Border Patrol Agent I. Castro was assigned to the Interstate 8 Border Patrol Checkpoint located in Pine Valley, California within Campo Border Patrol Station's area of responsibility. The checkpoint is approximately 12 miles north of the United States/ Mexico International Boundary and approximately 10 miles east of the Tecate, California Port of Entry. The Interstate 8 Checkpoint was fully operational with signs, lights, and cones in place. Agent Castro was wearing a Border Patrol rough duty uniform with all agency identifying insignia and badge visible.

12. At approximately 11:15 AM, a black Toyota Camry bearing a California license plate approached the primary inspection area. At primary, Agent Castro questioned the driver, later identified as defendant GARIBAY. Due to the Toyota Camry's dark tinted windows, Agent Castro asked GARIBAY to lower the rear window. GARIBAY began to display signs of nervous behavior and then lowered the rear window while telling the rear passenger, later identified as material witness MUNOZ, that Agent Castro would ask him some questions. Agent Castro noticed MUNOZ was attempting to conceal himself in the back seat with a jacket. Agent Castro then questioned GARIBAY on where he was traveling to, to which GARIBAY stated Los Angeles, California. Agent Castro then instructed GARIBAY to pull into secondary inspection area for further inspection.

13. Border Patrol Agent M. Enoch and Border Patrol Agent J. Bowen were at the secondary inspection area when the black Toyota Camry arrived at secondary inspection. In secondary inspection, Agent Bowen approached GARIBAY, identified himself as a Border Patrol Agent, and conducted an immigration inspection. GARIBAY replied, "U.S." Agent Bowen proceeded to conduct an immigration inspection on MUNOZ, who had a black jacket covering his face. Agent Bowen initially questioned MUNOZ in the English language, but MUNOZ gave a blank stare

as if he did not understand. Agent Bowen then conducted his immigration inspection in the Spanish language. MUNOZ stated he is a citizen of Mexico and was not in possession of any immigration documents that would allow him to enter or remain in the United States legally. At 11:22 AM, Agent Bowen placed MUNOZ under arrest for being present in the United States illegally. At approximately 2:39 PM, Agent Bowen informed GARIBAY he was under arrest for alien smuggling.

14. **Device 1** was found on GARIBAY's person and was claimed by GARIBAY. **Target Device 2** was found on GARIBAY's person and was claimed by GARIBAY. **Target Device 3** was found on MUNOZ's person and was claimed by MUNOZ. All **Target Devices** were subsequently seized.

15. GARIBAY was read his Miranda rights. GARIBAY stated he understood these rights and agreed to answer questions without an attorney present. GARIBAY stated that he borrowed the black Toyota Camry from a friend on September 21, 2026. GARIBAY stated that he picked up his passenger, Gaudencio MUNOZ-Zamora, on the side of Interstate 8 near a rest stop. GARIBAY stated that he saw MUNOZ on the side of the road and felt bad, so he stopped and picked him up. GARJBAY stated that he did not know MUNOZ before today.

16. MUNOZ stated that he made smuggling arrangements and agreed to pay $10,000 USD to be smuggled to Santa Maria, California. MUNOZ stated he was transported by vehicle to Tecate, Baja California by two unknown smugglers approximately 50 miles east of Tijuana, Baja Californian, Mexico. MUNOZ stated he was later taken to the United States/Mexico International Boundary fence to cross using a ladder. MUNOZ stated he made his way to a rest stop on Interstate 8 where he attempted to flag cars. After about one hour a black car with four doors stopped. MUNOZ stated that he got in himself and the driver did him a favor in taking him to San Diego, California. MUNOZ stated that he sat in rear seat on the passenger side of the vehicle. MUNOZ was

shown a photographic lineup of six individuals. MUNOZ did not identify anyone in the photographic lineup.

17. Based upon my experience and training, consultation with other law enforcement officers experienced in human smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the Target Devices. In light of the above facts and my experience and training, there is probable cause to believe that the defendant and material witness were using the Target Devices to communicate with others to further transport the illegal alien into the United States.

18. Based on my training and experience, it is also not unusual for individuals, such as the defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Similarly, I know from my training and experience that aliens commonly make smuggling arrangements days or weeks in advance of their physical border crossing attempt. Accordingly, I request permission to search **Target Devices** for data beginning on **September 9, 2026, through September 23, 2026.**

19. Identity is an element of every crime. Establishing the individual with access to or control over the Target Devices at or around the time when data or applications were accessed or when electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data were generated helps attribute that evidence to a particular individual. Thus, items that tend to identify the user of, or persons with control over or access to, the Target Devices also constitute evidence of the offenses being investigated.

## METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the devices are

subscribed, and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in “flight mode” which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of these warrants, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

22. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting

the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

23. Law enforcement has not previously attempted to obtain the evidence sought by these warrants.

## CONCLUSION

24. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of an alien smuggling violation of Title 8, United States Code, Sections 1324.

25. Because the **Target Devices** were seized at the time of the defendant's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **September 9, 2026, through September 23, 2026.**

26. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the items described in Attachments A-1, A-2, & A-3 and to seize the items listed in Attachment B using the above-described methodology. I swear the foregoing is true and correct to the best of my knowledge and belief.

*Adan Mendoza-Rojas*

Adan Mendoza-Rojas
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 15th day of October 2026.

HON. MICHAEL S. BERG
United States Magistrate Judge

# ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

Model VL 68PRO
Seized as FP&F No. 2026255400034901-0003
**("Target Device 2")**

**Target Device 2** is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

# ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachments A-1, A-2, & A-3includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **September 9, 2026, through September 23, 2026.**

a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b. tending to identify accounts, facilities, storage Device, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which is evidence of violations of Title 8, United States Code, Section 1324.